UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Robert L. Velderman**, | ) | |
| | ) | Case No. 1:04-cv-269 |
| Plaintiff, | ) | |
| | ) | Hon. Hugh W. Brenneman, Jr. |
| v. | ) | |
| | ) | |
| **Midland Credit Management, Inc.,** | ) | **Plaintiff's Brief in Support** |
| a Kansas corporation, | ) | **of Partial Summary Judgment** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.    Introduction.**

This lawsuit was filed by Robert L. Velderman, a consumer, against Midland Credit

Management, Inc. ("MCM"), a debt collector, in response to MCM's violations of the federal

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan

Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

The facts of this case are not complicated.  Mr. Velderman had a credit card debt which

he disputed and refused to pay.  MCM purchased the disputed debt for a few pennies on the

dollar and then contacted Mr. Velderman for payment.  Mr. Velderman continued to dispute the

debt.  MCM's collector misrepresented to Mr. Velderman that because of the passage of time,

Mr. Velderman had waived any right to contest the debt and that payment must be made.  The

collector's misrepresentations violated the FDCPA and MCPA.

Mr. Velderman has filed a motion for partial summary judgment to establish that  MCM

has violated the FDCPA, but leaving the determination of whether MCM has violated the

MCPA, as well as the award of damages, costs and reasonable attorney fees, for trial or other

subsequent proceedings.

## II.  Statement of Undisputed and Material Facts.

All of the facts material to plaintiff's motion for partial summary judgment are set forth in this section of plaintiff's brief.  There is no genuine issue as to any of these material facts.

Mr. Velderman opened a credit card account with Household/Orchard Bank and used the account to incur debt (the "Debt") for personal, family and/or household purposes. Complaint ¶ 5; Answer ¶ 5; Affidavit of Robert L. Velderman, ¶ 2.

Mr. Velderman made regular and timely payments on the Debt to Household/Orchard Bank, but the bank repeatedly failed to post the payments to his account in a timely manner, and repeatedly assessed his account with improper penalties, improper late fees and other improper charges.  Complaint ¶ 6; Answer ¶ 6; Affidavit, Velderman, ¶ 3.

Mr. Velderman repeatedly and continuously disputed the Debt with Household/Orchard Bank, and eventually he refused to make further payment on the Debt.  Complaint ¶ 6; Answer ¶ 6; Affidavit, Velderman, ¶ 4.

Eventually, Household/Orchard Bank agreed to delete the disputed penalties, late fees and other unwarranted charges from Mr. Velderman's account, and agreed to provide him with an accounting and revised billing statement, but the bank stopped billing Mr. Velderman altogether, and he never heard from the bank again.  Complaint ¶ 6; Answer ¶ 6; Affidavit, Velderman, ¶ 5.

Midland Credit Management, Inc., a debt collector, later purchased the disputed Debt. Complaint ¶ 7; Answer ¶ 7; Affidavit, Velderman, ¶ 6.

On or about October 22, 2003, Mr. Velderman received a telephone call from an

2

employee of MCM named "Melissa," who demanded that he pay the Debt.  Complaint ¶ 8;

Answer ¶ 8; Affidavit, Velderman, ¶ 7.   In their telephone conversation, Mr. Velderman

repeatedly told Melissa that he disputed the Debt and that he refused to pay the Debt.  Complaint

¶ 8; Answer ¶ 8; Affidavit, Velderman, ¶ 8.

On October 29, 2003 at approximately 11:40 a.m. (EST), Mr. Velderman again spoke by

telephone with Melissa.  Complaint ¶ 10; Answer ¶ 10; Affidavit, Velderman, ¶ 9.  In their

telephone conversation, Mr. Velderman repeatedly told Melissa that he disputed the Debt and that

he refused to pay the Debt.  Complaint ¶ 10; Answer ¶ 10; Affidavit, Velderman, ¶ 10.

In the October 29, 2003 telephone conversation, Melissa told Mr. Velderman that MCM

previously had sent him a letter advising him that he had the right for a period of thirty days from

his receipt of the letter to dispute the Debt and thereby require MCM to provide him with proof

that he owed the debt.  Complaint ¶ 10(a); Answer ¶ 10(a); Affidavit, Velderman, ¶ 11.

In the October 29, 2003 telephone conversation, Melissa also told Mr. Velderman: "You

never responded to the letter, and because of that, it basically, by not responding and disputing it,

you took the resolve, that you were taking responsibility for the account."  Complaint ¶ 10(b);

Answer ¶ 10(b); Affidavit, Velderman, ¶ 12.

In the October 29, 2003 telephone conversation, Melissa also Mr. Velderman: "As far as a

dispute, when you are this far along in late-stage collection, the only dispute you can really do is

for fraudulent claims."  Complaint ¶ 10(c); Answer ¶ 10(c); Affidavit, Velderman, ¶ 13.

In the October 29, 2003 telephone conversation, Mr. Velderman asked Melissa, "Are you

telling me that I don't have any right, right now, to dispute this amount?" Melissa responded,

"No.  I'm telling you, you can dispute it, but you have to have proof that there's been fraudulent

3

activity."  Complaint ¶ 10(d); Answer ¶ 10(d); Affidavit, Velderman, ¶ 14.

In the October 29, 2003 telephone conversation, Melissa also told Mr. Velderman:  "You can't write a letter and say I dispute it.  At this point, the way the law works is that, we send you out a letter, and you have thirty days to respond back, and if you respond within that first thirty days, the laws says that Midland Credit would have to prove to you why you owe the balance.  There was never any response, so by legal standards, that means that you took responsibility for the debt, and at this point, since we've had this account since 2001 and we're going on almost into 2004 now, you would have to provide us proof of why your dispute is valid.  So we have certain people who do dispute accounts, saying, well, this account was stolen, they provide us with police reports, things of that nature."  Complaint ¶ 10(e); Answer ¶ 10(e); Affidavit, Velderman, ¶ 15.

## III.    Statement of Questions Presented

Mr. Velderman submits that summary judgment in this matter hinges on the resolution of the following legal issue:

1.    Did MCM make a false, deceptive, or misleading misrepresentation and thereby violate the FDCPA when its collector represented to Mr. Velderman that because Mr. Velderman had not previously disputed the debt to MCM in writing, Mr. Velderman had waived his right to dispute owing the debt (other than for a dispute based on fraud) and had conceded liability for the debt?

Mr. Velderman asserts that this legal issue must be answered in the affirmative and that the Court should grant his motion for partial summary judgment, finding MCM liable for violating the FDCPA.

4

**IV.    Argument**

    **A.    Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.  A summary
> judgment, interlocutory in character, may be rendered on the issue of
> liability alone although there is a genuine issue as to the amount of
> damages.

To prevail on a motion for summary judgment the moving party must establish that no genuine

issue of material fact exists, and that it is entitled to judgment as a matter of law.  *Celotex Corp.*

*v. Catrett,* 477 U.S. 317 (1986).

      Substantive law defines which facts are material and only disputes over facts that might

affect the outcome of the case will defeat summary judgment.  *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  A factual dispute is genuine if a "reasonable

jury could return a verdict for the non-moving party."  *Id.*  Although all inferences to be drawn

from the underlying facts must be viewed in the light most favorable to the non-moving party,

once the movant has met his burden of demonstrating the absence of a genuine issue of material

fact, the party opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts" to prevent its entry.  *Matsushita Electric Industrial*

*Co. v. Zenith Radio Corp.,* 475 U.S. 547, 586-87, 106 S. Ct. 1348, 1355-56, 89 L.Ed.2d 538

(1986).  It is not sufficient for the party opposing summary judgment to provide a scintilla of

evidence supporting its case.  *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 252, 106 S. Ct.

at 2512.

**B.     General Principles of Construction of the FDCPA**

**1.     The FDCPA was enacted to protect consumers.**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

**2.     The FDCPA is liberally construed in favor of the consumer to effectuate its purposes.**

The FDCPA is a remedial statute and should be liberally construed.  *See Frey v. Gangwish II,* 970 F.2d 1516, 1521 (6th Cir. 1992)("The [FDCPA] is an extraordinarily broad statute. . . .  We must enforce this statute as Congress has written it"); *Johnson v. Riddle,* 305 F.3d 1107 (10th Cir. 2002); *Cirkot v. Diversified Financial Sys., Inc.,* 839 F.Supp. 941, 944 (D. Conn. 1993).

**3.     The FDCPA is a strict liability statute.**

The FDCPA is a strict liability statute.  *Stojanovski v. Strobl & Manoogian,* 783 F.Supp. 319 (ED Mich. 1992); *Edwards v. McCormick,* 136 F.Supp.2d 795, 800 (SD Ohio, 2001) ("[T]he Sixth Circuit treats the FDCPA as a strict liability statute" citing *Frey,* 970 F.2d at 1518-19).

**4.     A single violation of any provision of the FDCPA is sufficient to establish liability.**

A single violation of any provision of the FDCPA is sufficient to establish liability.   15 U.S.C. § 1692k; *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2nd Cir. 1993); *Taylor v. Perrin, Landry, deLaunay & Durrand,* 103 F.3d 1232, 1238 (5th Cir. 1997).

6

**5.  The focus of the FDCPA is on the conduct of the debt collector, not on the conduct of the consumer.**

The focus of the FDCPA is on the conduct of the debt collector, not on the conduct of the consumer.  *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998)("We must focus on the debt collector's misconduct, not whether the debt is valid . . . .")

**6.  A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.**

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The section sets forth in sixteen subsections,  specific examples of deceptive representation or means that violate the FDCPA.  15 U.S.C. § 1692e(1)-(16).  However, 15 U.S.C. § 1692e expressly states that the list of sixteen violations is not exhaustive.  *See Clomon v. Jackson,* 988 F.2d 1314, 1320 (2nd Cir. 1993)("[I]t should be emphasized that the use of any false, deceptive, or misleading misrepresentation in a collection letter violates § 1692e regardless of whether the representation in question violates a particular subsection of that provision.")

**7.  In determining whether a debt collector has violated the FDCPA, courts in the Sixth Circuit apply the "least sophisticated consumer" standard.**

In determining whether a debt collector has violated the FDCPA, courts in the Sixth Circuit apply the "least sophisticated consumer" standard.  *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1028 (6th Cir. 1992); *Gradisher v. Check Enforcement Unit, Inc.,* 210 F.Supp.2d 907, 912 (W.D. Mich. 2002).

8.    The "least sophisticated consumer" standard is an objective standard which focuses upon whether the debt collector's actions would have misled or deceived the least sophisticated consumer.

The "least sophisticated consumer" standard is an objective standard which focuses upon whether the debt collector's actions would have misled or deceived the least sophisticated consumer. *Smith v. Transworld Sys., Inc.,* 953 F.2d at 1028; *Gradisher,* 210 F.Supp.2d at 912.

9.    The "least sophisticated consumer" standard is lower than simply examining whether particular language would deceive or mislead or deceive a reasonable debtor.

The "least sophisticated consumer" standard is lower than simply examining whether particular language would deceive or mislead or deceive a reasonable debtor. *Smith v. Computer Credit, Inc.,* 167 F.3d 1052, 1052 (6th Cir. 1999); *Gradisher,* 210 F.Supp.2d at 912. The "least sophisticated consumer" is a naive, credulous, gullible, ignorant, unthinking, person of "below-average sophistication or intelligence" "with a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon,* 988 F.2d at 1318.

10.   A representation is deceptive or misleading if it subject to an inaccurate yet reasonable interpretation by the least sophisticated consumer.

A representation is deceptive or misleading if it subject to an inaccurate yet reasonable interpretation by the least sophisticated consumer. *Russell v. Equifax A.R.S,* 74 F.3d 30, 36 (2nd Cir. 1996).

11.   Whether a representation is deceptive or misleading from the perspective of the least sophisticated consumer is ordinarily a question of law for the Court, where the defendant has not conceded liability.

Whether a representation is deceptive or misleading from the perspective of the least sophisticated consumer is ordinarily a question of law for the Court, where the defendant has not

conceded liability. *Schweizer v. Trans Union Corp.,* 136 F.3d 233, 237-38 (2nd Cir. 1998), citing *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2nd Cir. 1996) and *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62-63 (2nd Cir. 1993).

> **12. The FDCPA prohibits collection practices that violate other state or federal laws.**

The FDCPA prohibits collection practices that violate other state or federal laws. *Picht v. Jon R. Hawks, Ltd.,* 236 F.3d 446, 448 (8th Cir. 2001); *Gaetano v. Payco,* 774 F.Supp. 1404, 1414-15 (D. Conn. 1990).

> **C. Midland Credit Management, Inc. has violated the FDCPA**

MCM's collector told Mr. Velderman the because he had not previously disputed the debt to MCM in writing, he had waived his right to dispute owing the debt (other than for a dispute based on fraud) and had conceded liability for the debt. This representation by MCM was false and therefore violated the FDCPA.

One of the key consumer protection provisions in the FDCPA requires the debt collector "within five days of the initial communication with a consumer in connection with the collector of any debt" to provide the consumer with a written notice stating the following information: "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;" and "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(3) and (4).

If a consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector must cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt and mails the verification to the consumer.  15 U.S.C. § 1692g(b).

On the other hand, if the consumer fails to dispute the debt in writing within the thirty-day period, the consumer's inaction does not make the debt valid or otherwise constitute a waiver by the consumer of his right to contest the validity of the debt.  Rather, the only consequence to the consumer for failing to timely dispute and demand verification of a debt is that the debt collector "may assume that the debt is valid."  15 U.S.C. § 1692g(a)(3).

Further, the FDCPA expressly states that a consumer's failure to make a written dispute and demand for verification within the thirty-day period does not waive the consumer's right to contest the debt:  **"The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."** 15 U.S.C. § 1692g(c).

In this case, it is undisputed that MCM's collector made the following statements to Mr. Velderman regarding the consequences of his failure to dispute the debt in writing within the thirty-day period:

> "You never responded to the letter, and because of that, it basically, by not responding and disputing it, you took the resolve, that you were taking responsibility for the account."

> "As far as a dispute, when you are this far along in late-stage collection, the only dispute you can really do is for fraudulent claims."

> When Mr. Velderman asked the collector "Are you telling me that I don't have any right, right now, to dispute this amount?" the collector responded, "No.  I'm telling you, you can dispute it, but you have to have proof that there's been fraudulent activity."

10

"You can't write a letter and say I dispute it.  At this point, the way the law works is that, we send you out a letter, and you have thirty days to respond back, and if you respond within that first thirty days, the laws says that Midland Credit would have to prove to you why you owe the balance.  **There was never any response, so by legal standards, that means that you took responsibility for the debt**, and at this point, since we've had this account since 2001 and we're going on almost into 2004 now, you would have to provide us proof of why your dispute is valid.  So we have certain people who do dispute accounts, saying, well, this account was stolen, they provide us with police reports, things of that nature."

These statements made by MCM's collector were false, deceptive or misleading because they were contrary to the FDCPA mandate that "the failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."  15 U.S.C. § 1692g(c).

The FDCPA states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  More specifically, the FDCPA states the following conduct is a violation of the section:

> "The false representation of the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)); and

> "The use of any false representation or deceptive means to collect or attempt to collect any debt."  (15 U.S.C. § 1692e(10)).

Because MCM misrepresented to Mr. Velderman that his failure to make a written dispute and demand for verification within the thirty-day period waived his right to contest the debt, MCM violated the FDCPA, 15 U.S.C. § 1692e(2)(A) and (10).

To determine whether a debt collector has violated the FDCPA, courts in the Sixth Circuit apply the "least sophisticated consumer" standard.  The "least sophisticated consumer" standard is an objective standard which focuses upon whether the debt collector's actions would have misled or deceived the least sophisticated consumer.  Thus, whether or not Mr. Velderman

11

was actually misled or deceived by MCM's representations is not relevant.

The "least sophisticated consumer" standard is lower than simply examining whether particular language would deceive or mislead or deceive a reasonable debtor.  The "least sophisticated consumer" is a naive, credulous, gullible, ignorant, unthinking, person of "below-average sophistication or intelligence."

A representation is deceptive or misleading if it subject to an inaccurate yet reasonable interpretation by the least sophisticated consumer.  Whether a representation is deceptive or misleading from the perspective of the least sophisticated consumer is ordinarily a question of law for the Court, where the defendant has not conceded liability.

Applying the "least sophisticated consumer" standard to the facts of this case, the Court should conclude that the statements made by MCM's collector to Mr. Velderman regarding the consequences of his failure to dispute the debt in writing within the thirty-day period were false, deceptive or misleading.  Accordingly, MCM violated the FDCPA, 15 U.S.C. § 1692e(2)(A) and (10).

## V.     Conclusion

Mr. Velderman requests that the Court  grant his motion for partial summary judgment by determining that Midland Credit Management, Inc. has violated the FDCPA, 15 U.S.C. § 1692e(2)(A) and (10).  Mr. Velderman leaves the determination of  whether MCM has violated the MCPA, as well as the award of damages, costs and reasonable attorney fees, for trial or other subsequent proceedings.

Dated: January 18, 2005                    Respectfully submitted,


                                   s/ Phillip C. Rogers
                                      Phillip C. Rogers (P34356)
                                      Attorney for Plaintiff
                                      Trust Building, Suite 336
                                      40 Pearl Street, N.W.
                                      Grand Rapids, Michigan 49503
                                      (616) 776-1176

13