UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. VELDERMAN,

       Plaintiff,

                                  Case No. 1:04-CV-269

v.

                                    Hon. Hugh W. Brenneman, Jr.

MIDLAND CREDIT MANAGEMENT,
INC.,

       Defendant.

_____/

**OPINION**

       This action alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), in Count I, and the Michigan Collection Practices Act,  MCL § 339.901 *et seq.* ("MPCA), in Count II.  Before the court is plaintiff's motion for partial summary judgment on the issue of liability with respect to the FDCPA claim asserted in Count I (docket no. 22).

**I.      Standard of Review**

       In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth  the standard for deciding a Rule 56 motion:

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v.  Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 2552-53, 91 L.Ed.2d 265 (1986).  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *LaPointe*, 8 F.3d at 378.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff.  *Anderson*, 477 U.S. at 252.

*Id.*  at 478-79.  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## II.     Plaintiff's claim

Plaintiff contends that defendant's collector, "Melissa", made false, deceptive or misleading statements during a telephone conversation with plaintiff on October 29, 2003. Specifically, plaintiff contends that defendant violated the FDCPA when Melissa told him that "because he had not previously disputed the debt to [defendant] in writing, he had waived his right to dispute owing the debt (other than for a dispute based on fraud) and had conceded liability for the debt."  Plaintiff's Brief at 9.  Plaintiff relies on 15 USC §§ 1692e(2)(A) and (10), which provide in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . .
>
> (2)  The false representation of  ---
> (A) the character, amount, or legal status of any debt. . . .
>
> (10)  The use of any false representation or deceptive means to collect or attempt to collect any debt . . .

15 U.S.C. § 1692e(2)(A) and (10).

"Congress enacted the FDCPA in 1977 'to eliminate abusive debt collection practices by debt collectors' and to insure that debt collectors who refrain from abusive practices are not competitively disadvantaged."  *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 741 (N.D. Ill. 2003); 15 U.S.C. § 1692(e).  The FDCPA forbids a debt collector from making a false representation

of "the character, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).  *See, e.g., Aronson v. Commercial Financial Services,* Inc., No. Civ. A 96-2113, 1997 WL 1038818 at \*4 (W.D. Pa., Dec. 22, 1997) (a debt collector's false statement made during a telephone conversation violates the § 1692e(2)(A) if it misrepresents the amount or character of a debt);  *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480, 1488-89 (D. Ala. 1987) (debt collector violates § 1692e(2)(A) when it threatens to sue a consumer on a claim that the debt collector knows is barred by the applicable statute of limitations).  A single violation of § 1692e is sufficient to establish liability under the FDCPA. *Gervais v. Riddle & Associates,P.C.*, 363 F. Supp. 2d 345, 349-50 (D. Conn. 2005).

The Sixth Circuit has adopted the "least sophisticated consumer" test in determining whether a debt collector made a misrepresentation to a consumer in violation of the FDCPA.  *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 400 (6th Cir. 1998); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992). The "least sophisticated consumer" test is an objective analysis that seeks to protect the interests of both naive consumers and debt collectors.  *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F. 3d 360, 363 (2nd Cir. 2005).  "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials."  *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232 1236 (5th Cir. 1997).

The gist of plaintiff's claim is that defendant's collector made misrepresentations regarding plaintiff's ability to dispute the debt.  These alleged misrepresentations arise from the debt validation provisions of the FDCPA  set forth in 15 U.S.C. § 1692g.  Congress included these debt validation provisions "to guarantee that consumers would receive adequate notice of their rights under the law." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3rd Cir. 2000). "The debt validation

notice is designed to fulfill congressional intent to 'eliminate the recurring problem of debt collectors

dunning the wrong person or attempting to collect debts which the consumer has already paid.'

S.Rep. No. 382, 95th Cong.2d Sess. 4, reprinted in 1977 U.S.Code Cong. & Admin.News 1695,

1699." *Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1410 (D. Conn. 1990).

Section 1692g provides in pertinent part that:

(a) Notice of debt; contents. Within five days after the initial communication with
a consumer in connection with the collection of any debt, a debt collector shall,
unless the following information is contained in the initial communication or the
consumer has paid the debt, send the consumer a written notice containing

. . . .
(3) a statement that unless the consumer, within thirty days after
receipt of the notice, disputes the validity of the debt, or any portion
thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in
writing within the thirty-day period that the debt, or any portion
thereof, is disputed, the debt collector will obtain verification of the
debt or a copy of a judgment against the consumer and a copy of such
verification or judgment will be mailed to the consumer by the debt
collector;
. . . .

15 U.S.C. § 1692g(a)(3) and (4).

The FDCPA also provides, however, in a following subsection that:

(c) Admission of liability. The failure of a consumer to dispute the validity of a debt
under this section may not be construed by any court as an admission of liability by
the consumer.

This latter subsection explicitly limits the legal effect of the consumer's decision not to dispute a

particular debt during this process. If a debtor fails to dispute the debt within thirty days, a debt

collector may assume the debt is valid. *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). However,

this same failure of a consumer "to dispute the validity of a debt under this section may not be

construed by any court as an admission of liability by the consumer." § 1692g(c). Thus, a debt collector's statement violates the FDCPA if the statement misleads a consumer "into believing that if the debt is not disputed within 30 days, federal law, rather than just the debt collector, will assume the debt to be valid and owing." *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 745 (N.D. Ill. 2003). In short, the validation provision of §1692g(a)(3) "provides only that the *debt collector* may assume the debt to be valid." *Id.* (emphasis in original).

### III.    The transcript of the telephone conversation

The court has been offered two sources from which to determine what was said during the telephone conversation in question. First, plaintiff has submitted an affidavit in support of his motion, in which he states that he made an audio tape of the telephone conversation. He has included material purporting to be verbatim quotes from parts of that conversation. Defendant objected to the affidavit as failing to comply with the requirements of Fed. Rules Civ. Proc. 56(e), because, among other things, it contained conclusory statements and did not include a "sworn or certified" copy of the transcript referred to in the affidavit. *See* Rule 56(e).

Alternatively, defendant has provided a copy of a nine-page transcript of the telephone conversation. Plaintiff initially objected to the transcript offered by defendant. Plaintiff's Reply at 5-6. However, at the motion hearing, both parties agreed that the court could rely on the transcript attached to defendant's response in deciding the motion for summary judgment. This eliminates any issue of fact as to the words spoken during the conversation. Accordingly, the court will decide plaintiff's motion for partial summary judgment based upon the conversation as set forth in the transcript.[1]

---

[1] The court notes that some "quotes" appearing in plaintiff's affidavit deviate slightly from the transcript. For purposes of this motion, the court will disregard plaintiff's affidavit and view the transcript

5

The transcript of the October 29, 2003 conversation between plaintiff and Melissa

provides in pertinent part:

PLAINTIFF:   Well, I disputed this claim with Orchard Bank from the very
beginning. I disputed the amount because they were adding late fees
for late payments and overdrafts that didn't occur and I was disputing
the claim from the beginning when I received the first one because I
know my payments weren't late. So I was in dispute of this amount
and this claim in the beginning with them, but I don't see anything on
here that says what my rights are in regards to disputing the claim
with you.

MELISSA:   Because we sent you out a dispute form when we first took ownership
of the account back in 2001. That's the only time that we legally
have to send you a letter to dispute it. You never responded to the
letter and because of that it basically, by not responding and disputing
it, you took the resolve that you are taking responsibility for the
account. We sent that letter to you back in December 2001. There
was no response. We left several messages. I mean, as far as a
dispute, when you are this far along in late stage collection, I mean,
the only dispute you can really do is for fraudulent claims. I don't see
how you have any proof that there has been fraudulent activity. If you
had disputed it with the original creditor and nothing had been done
then . . .

PLAINTIFF:   Well, when I initially disputed it with the original creditor I told them
I disputed it for the amount that was late and they told me it was
taken care of and then all of a sudden the next thing I know I get a bill
and it's saying the same thing and I'm going over my credit limit and
they are going to charge me for that. Well, I'm still dispute [sic] the
amount. You're telling me I don't have any right now to dispute this
amount?

MELISSA:   No, I'm telling you you can dispute it but you have to have proof that
there has been fraudulent activity. I'm saying where is the proof so
that . . . I mean you can't just write a letter and say you dispute it.
At this point, the way the law works is we send you out a letter and
you have 30 days to respond back and if you respond within that first
30 days, the law says that Midland Credit would have to prove to you
why you owe the balance. There was never any response so by legal

_____

as a complete and accurate record of the conversation between plaintiff and Melissa.

<u>standards that means you took responsibility for the debt and at this point, since we have had this account since 2001 and we are going on into almost 2004 now, you would have to provide us proof of why your dispute is valid.</u>  So, we have certain people who do dispute accounts say "well this account was stolen."  They provide us with police reports, things of that nature.

\*       \*       \*

PLAINTIFF:  Well, I don't ever recall getting a letter from your agency about this or anything, ok? You know, so I mean, I don't see how you can sit here and say I don't have a right to dispute the amount.

MELISSA:   I never said you didn't have a right to dispute it.

PLAINTIFF:  You just said . . .

MELISSA:   <u>I said you can dispute it but the only way disputes work at this point, accordingly to the law, is that you will have to provide us with proof of why your dispute is valid.  That's not too much to ask that you provide proof.</u>  But if you have no proof and the dispute was basically never . . . there was never anything that was done with the original lender because they didn't think that is was a valid dispute and you still have the same dispute now and you haven't done anything for several years and it has been sitting on your credit, I mean, they are going to want to see why you are disputing this other than the fact that you don't think that you should have gotten late fees and over limit fees which you agreed to when you signed up for the credit card. What is your dispute?

PLAINTIFF:  Yeah, but my agreement . . .

MELISSA:   We are offering to cut . . .

PLAINTIFF:  . . . the late fees and the overdraft fees was [sic] based on the fact that if my payments were late, and if I did go over the limit . . .

MELISSA:   If late fees take you over the limit then they have a right to charge over limit fees.  Midland Credit Management has nothing to do with those fees that the original lender charged you and as a result we are offering to waive 50% of the balance to, you know, give you a break. I mean, we understand the previous lender was charging you interest and late fees and over limit fees most likely.  So, we are offering to

7

waive 50% off.  What do you think is a fair amount for you to pay back?

PLAINTIFF:   Well I believe a fair amount would be what my limit was which I believe was $500.00 and because that's when the whole thing started when I started disagreeing with them of [sic] of that amount.

                         *          *          *

PLAINTIFF:   You can't . . . I mean . . . I just find it ridiculous that I don't recall ever getting a letter from you about anything.

MELISSA:     I'm sorry that you don't recall it.

PLAINTIFF:   Then you are telling me that I don't have a right to dispute it.

MELISSA:     I'm not . . . I never said that in this entire conversation.  I told you . . .

PLAINTIFF:   You told me that I have to say there is something fraudulent . . .

MELISSA:     No, you have to have proof.  That's what disputes do.  Disputes are something that you know is wrong and you can prove why it is wrong.  That's what a dispute is.

PLAINTIFF:   So I've got to try and show proof . . .

MELISSA:     That's what the law says.

PLAINTIFF:    . . . that they actually received payments on time?

MELISSA:     Well how can you accuse them of that without proof?  How do you know that they received it late and was [sic] posting it late?  Why do you think they were doing that?  They have much more to lose than a $29.00 late fee if that was true.  The lender . . . I mean that lender has . . . is a very very big bank.  If they were getting accused by several people and taken to court over that and it was proven, believe me, the $29.00 they can charge you late or over limit is not worth [sic] to them the amount they could lose if they were fraudulently posting your account late.  Your payments [sic] late.  And it doesn't matter at this point because they don't own that account and they never made the money off the late fees that they charged you.  At this

8

point, it's your moral conscience of paying the balance that you did owe, plus the interest that is rightfully charged on there.

\*       \*       \*

PLAINTIFF:   So you are telling me right now on the 29th of October that if I don't agree right now to make some kind of settlement agreement that you are going to send this over to take action?

MELISSA:   It's going to be forwarded on as a refusal to pay. Exactly. You have the letter like you asked me for. You said you wanted to see the letter first. I waited for you. I post dated a call. I made sure that I gave you a couple of weeks or at least a week to receive that information. You have received it. You told me when you looked it over you would make a decision. I don't think that's unfair to ask you to make a decision about whether you want to pay your bill or not. You are agreeing that you owe at least $500.00 so why have you never even attempted to pay $500.00 even?

PLAINTIFF:   So you are saying by the end of this week you will send it over for collection?

MELISSA:   By the end of this phone call I will send it over.

\*       \*       \*

PLAINTIFF:   Well, I can't look at it right now and say yes I can pay this amount or yes I can pay this amount because like I said, I still dispute it and the mailing address on this letter is incorrect now so you said you kept making contact with me and you made contact with me last year and 2001 or whatever, well . . .

MELISSA:   When I sent you that letter I asked you if that was the right mailing address. You told me "yes." I said "do you get your mail on _____ Center Avenue? We have a Port Sheldon Street." Is that the correct address?

PLAINTIFF:   No.

MELISSA:   Ok, well, you know, I asked you, you told me "yes." You are being dishonest with me so I don't know why I should believe anything you are saying.

9

                    \*      \*      \*

PLAINTIFF:   Well, you know what, I don't believe I owe this amount and feel like I can dispute the amount.  I don't understand why you aren't going to give me any amount of time to dispute this amount.

MELISSA:   You can dispute it. That's fine.  But you have had more than enough time.  You have had 3 1/2 years now at this point.

PLAINTIFF:   Well, you know, there has been a lot of other stuff going on in my life that to me was a lot more important.

MELISSA:   That's fine.  I understand that you have another life to lead, but when you made an agreement, should shouldn't have made a contract with a lender if you weren't planning on paying.  You knew that you at least charged $500.00.  I'm telling you right now.  We are not saying you have to pay $1,500.00.  I'm making a deal with you.  You think you owe $500.00?  Pay the $700.00 because you haven't made a payment in three years.  <u>Don't put yourself through the hassle of trying to dispute something you have no proof for and forwarding a balance for further action against you.  Why would you want to make your life more difficult?</u>  You are telling me that you owe at least $500.00.

                    \*      \*      \*

PLAINTIFF:   So you are saying if I don't make a commitment to you right now to pay the $774.00 over the next four months, by the end of this phone call you are going to immediately send it over to further action for collections?

MELISSA:   I don't have a choice.  That's procedure.  I'm sure you have procedures at your job.

PLAINTIFF:   Ok.  You know what? That's all I wanted to hear.

MELISSA:   Ok.  Midland Credit Management is a debt collection company.  This is an attempt to collect on a debt.  Any information obtained is used for that purpose.  I will be forwarding this on as a refusal to pay.  Good luck to you.

Transcript at pp. 2-9 (emphasis added).

## IV.    Discussion

The issue is whether defendant's collector made misrepresentations to plaintiff in violation of § 1692e , by suggesting plaintiff could only dispute the debt at this late stage by proving the debt was fraudulent.   The debt validation provision in § 1692g provides a mechanism for confirming that the debt actually exists for purposes of the debt collection process.  If the debtor does not dispute the debt within 30 days of notification, then the debt collector may assume that the debt is valid.  *See Avila*, 84 F.3d at 226.  This affords the debt collector some protection.   However, the debt validation process is not intended to change the legal burden of proof if the matter is taken to court.  In that instance, the debt collector cannot use the debtor's inaction as an admission of liability, s*ee* § 1692g(c), and the burden to prove the debt claimed remains on the debt collector.

Melissa's mistake was to represent to plaintiff that the provision affording protection to the debt collector changed the basic law of debtor's rights and placed a burden on the putative debtor to disprove a debt.  She did this is several ways.

First, she stated that by failing to respond within 30 days to the debt validation letter, plaintiff "took responsibility for the debt."  This is tantamount to saying that the legal status of the debt had changed.  She stated, for example:

> "The way the law works is we send you out a letter and you have 30 days to respond back. . . There was never any response so by legal standards that means you took responsibility for the debt. . ."

 And:

> "You never responded to the letter and because of that it basically, by not responding and disputing it, you took the resolve that you were taking responsibility for the account."

It is a misrepresentation for a debt collector to make a debtor believe that he is legally responsible

for the debt simply because the debtor failed to dispute the debt under § 1692(g).  *See, McCabe,* 272 F.Supp. 2d at 745.

Second, Melissa repeatedly told plaintiff that his only way out at that point in time was to prove there had been fraudulent activity by the creditor.  She stated the following:

> ". . . When you are this far along in late stage collection, I mean the only dispute you can really do is for fraudulent claims.  I don't see how you have any proof that there has been fraudulent activity."

And:

> "No, I'm telling you you can dispute it but you have to have proof. . ."

And:

> "[A]t this point, according to the law, . . . you have to provide us with proof of why your dispute is valid."

And:

> "No, you have to have proof [there is something fraudulent].  That's what disputes do.  Disputes are something that you know is wrong and you can prove why it is wrong.  That's what a dispute is."

In this instance, when plaintiff responds, "So I've got to try and show proof. . .," Melissa replies, "That's what the law says."

In a further instance, Melissa states:

> "Well, how can you accuse them of that without proof". . . if [the lending bank was] getting accused by several people and taken to court over that and it was proven, believe me, the $29.00 they can charge you late or over limit, is not worth to them the amount they could lose if they were fraudulently posting your account late."

12

One does not become legally responsible for a debt just because he does not respond to a dunning letter.  *See,* §1692(g)(c).  Plaintiff may or may not have incurred a debt, but it was not the failure to respond to the validation letter that created the liability.  Neither does the amount of time that has expired since a creditor first claimed a debt was owed create a liability.

A person's failure to respond to a debt validation letter does not even give rise to a presumption under the law that he is liable on the debt.  And if there is no presumption of a debt owed, there can be no requirement that the punitive debtor overcome the presumption by showing fraudulent activity on the part of the creditor.

In short, if the debt collector were to take this matter to court, it would bear the responsibility of proving the debt.

As discussed above, Melissa was incorrectly representing that the protection afforded a debt collector to assume a debt is valid was a statement of what the law is concerning the enforceability of a debt in court.  These statements, on their face, would have appeared to many consumers, and certainly to the "least sophisticated consumer," to be a representation of the legal status of his debt which he would face henceforth, and certainly if he were taken to court.  This point was driven home by Melissa's continual representations that the debt was an old one and that since a considerable amount of time had gone by, the debt was now established.  Faced with all these representations by a person in the business of debt collecting who presumably knows what she is talking about, the least sophisticated consumer could not be expected to guess that his legal status would become any less onerous if the case progressed to the next level, which, in this litigious society, virtually any consumer would assume to be a lawsuit.

After viewing the factual evidence and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that there is no genuine issue of material fact that the statements of defendant's collector (Melissa) violated § 1692e(2)(A) and (10).  Given the litigious nature of our society, it would be neither bizarre nor idiosyncratic for the least sophisticated consumer to believe after listening to Melissa  (1) that his failure to dispute the debt within thirty days of receiving the debt validation letter made him legally responsible for the debt and (2) that at this late stage only by proving fraudulent activity on the part of the bank could he show his "dispute was valid."

### V.    Conclusion

For the reasons set forth above, plaintiff's motion for partial summary judgment (docket no. 22) will be GRANTED.  An order consistent with this opinion shall be issued forthwith.


Dated:  September 29, 2005                      /s/ Hugh W. Brenneman, Jr._____
                                               Hugh W. Brenneman, Jr.
                                               United States Magistrate Judge